## MICHIGAN STATE BANK *vs.* JOHN D. GARDNER & others.

The indorsee of a draft purporting to be drawn against a consignment of merchandise described in a warehouse receipt and certificate annexed, by which the drawer declared a lien on the merchandise in favor of the holder of the draft, reserving however to the consignee the right to sell the merchandise when received, holding the proceeds instead in trust for the holder of the draft, may maintain a bill in equity to enforce the trust against the consignee and his pledgee.

The laws of the State of Michigan provided that all corporations whose charters expired by their own limitation should continue to be bodies corporate for three years, for the purpose of prosecuting and defending suits by or against them, and that any suit pending in favor of a corporation at the time of its dissolution should not be thereby abated, but might be prosecuted by the trustees on whom its estate should have devolved, in its or their name, under the direction of the court in which the suit might be pending

Shortly before the end of the three years next after the expiration of its charter, a corporation established by the laws of Michigan sold and assigned to an individual all its property and claims, upon his giving bond to pay its debts and do certain other things. *Held*, that a suit commenced in this state before the expiration of the charter might be prosecuted to judgment after the end of the three years, in the name of the corporation, by the assignee.

A, in Detroit, drew a draft on B, in Boston, purporting to be drawn against certain flour described in a receipt and certificate annexed, by which A acknowledged possession of the flour, and engaged to hold it subject to the sole order of B, and to ship it consigned to B by the first opportunity, and certified that he had drawn the draft against the flour and that the receipt and certificate should remain attached to the draft, and be evidence of a lien on the flour in favor of the holders of the draft, reserving to the consignee, however, the right to sell the flour upon receipt of it, holding the proceeds instead in trust for the holders of the draft. A indorsed the draft to C, and B accepted it. *Held*, that a special property in the flour vested in C, and that C, by giving notice to B, before he had otherwise disposed of the flour or the proceeds of the sale of it if sold, could hold him liable in equity for the amount of the draft.

At common law, and under the *St.* of 1845, *c.* 193, a consignee had no power to pledge goods consigned to him for sale; and a lien previously created upon such goods by the consignor, with the knowledge of the consignee, would follow them into the hands of an innocent party to whom the consignee had fraudulently pledged them for advances to himself.

BILL IN EQUITY by a corporation established by the laws of the State of Michigan against John D. Gardner & Co., Fitz Henry DeWolf, and Charles D. Gibson, alleging that on the 30th of September 1847, at Detroit, DeWolf, being the owner of the flour named therein, signed the following warehouse receipt and certificate:

" Received in store, in good order and condition, by F. H. DeWolf, 211 barrels of superfine flour, branded and marked as in the margin, which I hereby agree to hold, insurance perils excepted, subject to the sole order of Charles D. Gibson or his assigns, and by first opportunity to ship the same, consigned to Charles D. Gibson or his assigns. Storage at Detroit to be paid by owners. With condition that this receipt remains attached to the following certificate referring to the property herein described. In witness whereof I have signed two receipts, numbered seven, all of this tenor and date, one of which being accomplished, the other to be void, at Detroit, this thirtieth day of September 1847. Fitz Henry DeWolf.

" I hereby certify, that I have drawn my draft for eight hundred and forty four dollars, dated 30th September 1847, payable November 29th, 2d December 1847, and numbered seven,

on said Charles D. Gibson, against the property described in receipt herewith numbered seven, by F. H. DeWolf. This receipt and certificate shall remain attached to said draft, and shall be evidence of a lien on the said property, in favor of the holders of said draft, until payment; but reserving to the consignee named in this receipt and certificate the right to sell the same upon receipt, holding the proceeds, instead of said property, in trust for the holders of said draft.

" Fitz Henry DeWolf. "

The bill then alleged that on the same day DeWolf drew a draft, payable to his own order on Gibson, corresponding with the description in the certificate, and declared to be drawn against the flour described in the receipt, and indorsed it, with the receipt and certificate, to the plaintiffs, on their advancing to him the amount thereof; and that the draft was accepted by Gibson, but protested at maturity for nonpayment. The bill also set forth the subsequent giving by DeWolf of other similar receipts and certificates for sixteen hundred and fifty barrels of flour, accompanied by like drafts, at different dates from the 19th of October to the 12th of November 1847, all which drafts were in like manner indorsed to the plaintiffs, accepted by Gibson, and protested at maturity for nonpayment.

The bill then alleged that DeWolf shipped and consigned all the flour to Gibson at Boston, for sale on DeWolf's account; that Gibson received the flour, and accepted the consignments, with notice of the plaintiffs' liens (which were sufficient to cover the value of the flour) by way of trust; and on the 1st of December 1847 received bills of lading by two vessels for sixteen hundred and fifty six barrels of said flour, as agent or factor of DeWolf, with authority to sell the same; and, without the authority or assent of DeWolf or of the plaintiffs, delivered the flour to Gardner & Co. as security for an advance by them to Gibson; that Gardner & Co. took the flour and sold it, and applied the proceeds to the satisfaction of their said debt; and that the plaintiffs demanded of Gardner & Co. the flour or its proceeds. The plaintiffs prayed for an account, for the payment of the amount of their lien, with interest, and for other relief.

The bill was taken for confessed against all the defendants but Gardner, who filed a demurrer on the ground that DeWolf should have been made a plaintiff instead of a defendant, which was overruled; 3 Gray, 305; and then an answer, admitting the making and indorsement of the receipts, certificates, and drafts, and the nonpayment and protest of the latter, substantially as alleged in the bill; denying that Gibson was the factor of DeWolf or of the plaintiffs, or trustee for any person of any flour by virtue of these receipts, certificates and drafts, or that any trust cognizable in equity was created by the facts stated in the bill; averring that the plaintiffs' remedy at law was complete, and for that reason demurring to the bill; and further alleging that Gardner & Co., not knowing of the transactions with the plaintiffs, or that the flour was not the sole property of Gibson, and in the usual course of business, made an advance to Gibson in cash on the property described in each bill of lading, took of Gibson both bills of lading indorsed by him as a transfer of the property, with authority to sell and dispose thereof, and sold the same for a sum insufficient to repay their advances; and asserting that if the bills of lading were held by Gibson in trust for the plaintiffs and DeWolf, still the assignment to Gardner & Co. was valid so far as concerned them, and the plaintiffs' remedy, if any, was against Gibson.

After replication filed and testimony taken, a hearing was had at November term 1857, before *Thomas*, J., who, upon the various objections made by the defendants, was of opinion:

" 1st. That the court had jurisdiction as a court of equity of the case presented by the plaintiffs in their bill and made out by the proofs.

" 2d. That the plaintiffs made out a good title to the property described in their bill, and that the defendants' objection that no sufficient delivery or separation of the property had taken place to vest the title thereto in the plaintiffs was not true in fact.

" 3d. That Gibson received the flour in question as the factor or trustee of the plaintiffs, upon the express written trust to sell the same, and hold and apply the proceeds for the benefit

of the plaintiffs to the payment of the drafts described in the plaintiffs' bill, and with no authority to pledge the same.

"4th. That upon the facts proved, namely, that upon the application by Gibson to Gardner & Co. for an advance upon the transfer and indorsement by him to them of the New York bills of lading of the flour in question, then on its way from New York to Boston, they did make an advance in cash to Gibson, who thereupon transferred and indorsed the bills of lading to them, with authority to sell and dispose of said property, and after deducting said advances and the usual commissions and expenses, to pay over and account with Gibson for the balance, if any, Gardner & Co. were not in law to be deemed *bona fide* purchasers of the flour in question, without notice of the trust upon which Gibson held the same.

"5th. That upon the facts stated in the answer, on which the question was argued, namely, that on the 24th of November 1847 Gibson applied to Gardner & Co., commission merchants, at Boston, to make to him an advance upon the consignment for sale to them of certain parcels of flour, then on their way from New York to Boston, and exhibited to them two bills of lading of that flour (being the flour here in question); and thereupon they did make an advance in cash to Gibson, upon the consignment for sale to them of the property described in the bills of lading, and Gibson did transfer and indorse the bills of lading to Gardner & Co., with authority to sell and dispose of said property, and, after deducting said advances and the usual commissions and expenses attending such sale, to pay over and account with Gibson, for the balance, if any; and the defendants afterwards sold the whole of said property, and the net proceeds of the sale did not equal the amount of said advances, by the sum of $1,550; the transaction between Gibson and Gardner & Co. was not in law a sale of the flour by Gibson to them, nor an attempted delegation to them of his power to sell under the express trust upon which he held the same; but that it was a qualified pledge or arrangement, by which they were to take and sell the flour, and apply the proceeds to the payment of a loan made by them to Gibson in

consideration of this very arrangement; such arrangement and disposal of the property being in direct violation and fraud of the trust upon which Gibson held the same.

"6th. That Gardner & Co. were bound to account to the plaintiffs for the proceeds of all such flour claimed in the plaintiffs' bill as should be traced into their hands from their two vessels;" and ordered the cause to be referred to a master, who reported that fourteen hundred and sixty five barrels of flour claimed by the plaintiffs came to the hands of Gardner & Co., and fixed the amount which the plaintiffs were entitled to recover at $ 6,146.17, with interest from the 14th of March 1848, the time of the plaintiffs' demand upon them.

Both parties filed exceptions to the master's report in matters of fact, which were overruled. The presiding judge reported the questions of law for the decision of the full court.

At March term 1858 the defendant Gardner moved to dismiss the suit, because the plaintiffs ceased to exist as a corporation on the 26th of March 1858; and also for leave to file a supplemental answer setting forth the same defence. The plaintiffs' charter from the State of Michigan was passed on the 26th of May 1835, and contained this provision : " This act shall take effect from and after its passage, and shall continue in force for the term of twenty years from said time." The plaintiffs gave in evidence the provisions of the Revised Statutes of Michigan which are copied in the margin ;* and a deed executed by them

---

* " All corporations whose charters shall expire by their own limitation, or shall be annulled by forfeiture or otherwise, shall nevertheless continue to be bodies corporate for the term of three years after the time when they would have been so dissolved, for the purpose of prosecuting and defending suits by or against them, and of enabling them gradually to settle and close their concerns, to dispose of and convey their property, and to divide their capital stock; but not for the purpose of continuing the business for which such corporations have been or may be established." *c.* 55, § 8.

" The dissolution of a corporation by a decree of the court, or by the expiration of its charter or otherwise, shall not abate any suit or proceedings in favor of such corporation which shall have been pending at the time of such dissolution ; but all such suits or proceedings may be continued by the receivers

to Charles C. Trowbridge on the 20th of February 1858, reciting that their corporate powers were about to expire and it had become necessary to provide by a sale of their assets for the payment of their remaining liabilities, consisting of bills in circulation, unpaid dividends and deposits, and amounting in all to $ 13,145.27; and by which deed, in consideration of a proposition by the grantee, accepted by the grantors, to purchase all their remaining assets, to attend to their collection, to pay in cash to the stockholders presently a sum equal to three per cent upon their stock, and such further sum as might be realized from the claim here in suit, and another claim in suit in Michigan after deducting the costs and expenses of suit, and a compensation for his attention and trouble not exceeding five per cent of the amount realized, and to pay all the expenses of these suits, and all outstanding claims against the corporation; and in further consideration of a bond executed by him to trustees for the stockholders and creditors of the corporation to secure the performance of this agreement; the plaintiffs assigned to him all their property and choses in action absolutely, and authorized him to prosecute suits, to receive moneys, and to do all acts necessary or proper to be done in the full conversion and reduction of such property as perfectly as they themselves could do. *Bigelow*, J. refused to dismiss the suit, and, at the defendant Gardner's request, reported the question to the full court.

*B. R. Curtis & E. Merwin*, for the plaintiffs. 1. The

who shall have been appointed for such corporation by the court, or by the trustees on whom the estate and effects of such corporation shall have devolved, in the name of such corporation, or in the names of such receivers and trustees, who may be substituted as plaintiff, under the direction of the court in which the suit shall be pending, and subject to such order as the court may deem expedient in relation to the payment or security of costs." *c.* 118, § 35.

"The court in which any suit or proceeding against a corporation, which shall have been dissolved by a decree in chancery or otherwise, shall be pending at the time of such dissolution, shall have power, on the application of either party thereto, to make an order for the continuance of such suit or proceeding, and the same may thereafter be continued until a final judgment or decree shall be had therein." § 38.

case stated in the bill is within the equitable jurisdiction of the court. There are more than two parties, whose interests cannot be adjusted by one action at law; the account between the plaintiffs and their consignee cannot be adjusted in an action at law without a discovery; and a plain case of trust is stated. Rev. Sts. *c.* 81, § 8; *c.* 118, § 43. *Michigan State Bank* v. *Gardner*, 3 Gray, 305. *Hobart* v. *Andrews*, 21 Pick. 526. *Mackenzie* v. *Johnston*, 4 Madd. 373. *Post* v. *Kimberly*, 9 Johns. 493. 1 Story Eq. Jur. § 464.

2. This suit did not abate on the dissolution of the plaintiffs' charter. The statutes of Michigan, which were given in evidence, provide in terms that suits shall not abate under such circumstances, but may be prosecuted by receivers appointed by the court, or " by trustees on whom the suits and effects of such corporation shall have devolved." Trowbridge was such a trustee. This being a remedial statute should receive a liberal construction. *Folger* v. *Chase*, 18 Pick. 66. *Franklin Bank* v. *Cooper*, 36 Maine, 179. The provision authorizing the survivorship of the suit, after the expiration of the charter, is a reasonable exercise of the same legislative power which created the corporation; and this court will recognize the authority and adopt and give effect to the foreign law conferring it, upon the same grounds that it will to the original charter. *Bank of Augusta* v. *Earle*, 13 Pet. 588, 589. *Greely* v. *Smith*, 3 Story R. 657. *Stewart* v. *United States Ins. Co.* 9 Watts, 126. Angell & Ames on Corp. § 779. Story Confl. § 565. In the absence of any statute provision, a court of equity would not suffer the suit to abate, but would entertain it to final judgment in behalf of the trustee. In equity, the assets of a corporation, notwithstanding its dissolution, are a fund for the payment of creditors and the benefit of stockholders; and when, before its dissolution, a conveyance of its assets has been made in trust for the benefit of creditors and stockholders, a court of equity will enforce this trust, and will aid the trustee in the collection of the assets. *Lenox* v. *Roberts*, 2 Wheat. 373. *Curran* v. *Arkansas*, 15 How. 304. *Bacon* v. *Robertson*, 18 How. 480. *Folger* v. *Chase*, 18 Pick. 63. Angell & Ames on Corp. § 195.

**3.** The authority and trust of Gibson were to sell the property and hold the proceeds thereof for the benefit of the plaintiffs. He could not delegate his authority, and did not attempt to. He indorsed the bills of lading to the defendants as security for the advances made to him by them, under an agreement that the defendants should sell the property, deduct their advances and the usual commission for such sale, and pay over the balance to him. This was in direct violation and fraud of his trust. It was no sale, but a pledge of the property. A factor to sell cannot pledge the goods of his principal; and the creditor who has made the advances, although ignorant that the debtor is merely a factor, and although the pledge is made by a transfer of bills of lading, is chargeable by law with notice of all facts that he might have ascertained by reasonable inquiry, and cannot hold the goods against the principal, either in law or equity. *Paterson* v. *Tash*, 2 Stra. 1178. *Daubigny* v. *Duval*, 5 T. R. 604. *Newsom* v. *Thornton*, 6 East, 17. *M'Combie* v. *Davies*, 7 East, 5. *Martini* v. *Coles*, 1 M. & S. 140. *Graham* v. *Dyster*, 6 M. & S. 1. *Guerreiro* v. *Peile*, 3 B. & Ald. 616. *Kinder* v. *Shaw*, 2 Mass. 398. *Evans* v. *Potter*, 2 Gallis. 13. *Van Amringe* v. *Peabody*, 1 Mason, 440. 2 Kent Com. (6th ed.) 625 – 627. *De Bouchout* v. *Goldsmid*, 5 Ves. 211. *Rodriguez* v. *Heffernan*, 5 Johns. Ch. 417. *Skinner* v. *Dodge*, 4 Hen. & Munf. 423. *Warner* v. *Martin*, 11 How. 224.

*S. Bartlett & G. G. Hubbard*, for the defendant Gardner. **1.** By the true construction of the receipts, certificates and drafts, and by Gibson's acceptance, not merely the possession but the property in the flour passed either solely to the plaintiffs, or else to Gibson as trustee for both the plaintiffs and DeWolf, to the extent of their respective interests, as should be determined by the ultimate sale. If the former, then the plaintiffs have a plain and complete remedy at law, and this court has no jurisdiction in equity. *Sears* v. *Boston*, 16 Pick. 357. *Law* v. *Thorndike*, 20 Pick. 317. *Woodman* v. *Saltonstall*, 7 Cush. 181. *Jacobs* v. *Peterborough & Shirley Rail road*, 8 Cush. 225. *Adams* v. *Palmer*, 6 Gray, 336. If the latter, then an innocent party to whom Gibson, in violation of

his trust, has pledged the property, has a title which must prevail against the parties creating the trust and appointing the trustee.

2. At common law, suits by and against a corporation are abated by the expiration of its charter. *Folger* v. *Chase*, 18 Pick. 66. *Mumma* v. *Potomac Co.* 8 Pet. 281. *Lenox* v. *Rob erts*, 2 Wheat. 373. *Torry* v. *Robertson*, 24 Miss. 192. Angell & Ames on Corp. § 191. Grant on Corp. 303. In none of the cases cited for the plaintiffs was the corporation dissolved by such expiration. A change in the common law in this respect can be made by the legislature only. The Rev. Sts. *c.* 44, § 8, contain similar provisions to those of the statutes of Michigan. A trustee cannot be recognized by our courts, unless appointed under our own statutes, any more than a foreign administrator. *Pond* v. *Makepeace*, 2 Met. 114. If an appointment here is not necessary, the statute of Michigan, being in its nature and provisions remedial, has no force here except by the rule of comity. *Blake* v. *Williams*, 6 Pick. 286. *Zipcey* v. *Thompson*, 1 Gray, 243. *Bank of Galliopolis* v. *Trimble*, 6 B. Monr. 599. To maintain this suit would directly conflict with the present law of this state, by which the pledgee of consigned property holds it against the consignor. *St.* 1849, *c.* 216, § 3. The provision of the statutes of Michigan refers only to cases of insolvency and devolution of property upon a receiver or trustee by judicial decree; and cannot include an outright sale of the assets, taking such a bond from the vendee as in this case.

3. The only question adjudged in *De Wolf* v. *Gardner*, 12 Cush. 19, was that De Wolf had been divested of his title. The title must be deemed to have vested in Gibson in trust to secure primarily the application of the proceeds of sale to the payment of the drafts, and next of the surplus, if any, to De Wolf. The papers did not name the plaintiffs, and were so framed as to make the security available to any one who might become, in the course of negotiation, the owners of the drafts. The transaction between Gibson and Gardner & Co. constituted a sale, because nothing remained to be done except to fix the price, which was to be the amount which the defendants

should obtain for the property. *Laussatt* v. *Lippincott*, 6 S. & R. 386, and notes thereto in 1 Amer. Lead. Cas. *Jewell* v. *Lincoln*, 14 Maine, 116. *Hoadly* v. *M'Laine*, 10 Bing. 487. 2 Saund. 122, note 2. Story on Sales, § 221. *Pratt* v. *Parkman*, 24 Pick. 45. *Rowley* v. *Bigelow*, 12 Pick. 307. *Hoffman* v. *Noble*, 6 Met. 68. *The Mary Ann Guest*, 1 Blatchf. C. C. 358. If not a sale, it was a deposit for sale, taking an advance in anticipation of sale, and wanting the ordinary feature of a pledge — redemption. See 1 Amer. Lead. Cas. *ub sup.*

But if it was a pledge, it cannot be avoided by the plaintiff. The doctrine that a mere factor cannot pledge rests upon the ground that, having no title or property in the chattels, but mere possession with a power restricted to a sale, he can confer no higher title than his own. *Shaw* v. *Stone*, 1 Cush. 228. *Kinder* v. *Shaw*, 2 Mass. 398. *Stevens* v. *Wilson*, 3 Denio, 472. But a *bona fide* purchaser from a trustee who has the title vested in him takes a good title. *Jarvis* v. *Rogers*, 15 Mass. 402, 408. *Collins* v. *Martin*, 1 Bos. & Pul. 651. *Haille* v. *Smith*, 1 Bos. & Pul. 563. Hill on Trustees, 509, 510. A person who takes security by way of mortgage or pledge from a trustee, for contemporaneous advances, and without notice of the trust, is within the same rule as an absolute purchaser.

The *St.* of 1845, *c.* 193, § 2, which provided that "every factor or other agent, entrusted with the possession of any merchandise for the purpose of sale, or any bill of lading consigning the same to such factor or agent for that purpose, shall be deemed to be the true owner thereof, so far as to give validity to any *bona fide* contract made by such factor or agent with any other person for the sale of the whole or any part of such merchandise," if not based on the earlier statutes of Great Britain, New York and Pennsylvania, yet was designed to remedy the same mischiefs, and is to receive a like construction. 1 Amer Lead. Cas. *ub. sup. Covill* v. *Hill*, 4 Denio, 330. The statute being manifestly intended to confer a power on the agent which he did not have before, the word "sale" must be extended beyond its literal sense to any disposition of the property by way of pledge or barter, and the *St.* 1845 must have equal effect with the *St.* of 1849, *c.* 216, § 3.

SHAW, C. J. 1. This court has jurisdiction in equity upon two grounds; because there are more than two persons having distinct rights and interests, which cannot be settled by one action at law, namely, the Michigan State Bank, Gardner & Co., DeWolf, and Gibson; and because the liability of Gardner to the plaintiffs was that of a trustee, not of the legal estate, but the qualified property, coupled with possession and power to use, and a power may be held in trust as well as an estate. .

2. The suit did not abate by the determination of the charter of the plaintiffs; because the plaintiffs, before such dissolution, transferred and assigned their effects, and especially this claim against Gardner, to Trowbridge, in trust for the stockholders of the bank and himself; and because the statute of Michigan provides that, where a suit is pending when the corporation is dissolved, it may be continued by receivers who have been appointed by the court, or by trustees on whom the property of the corporation has devolved, under such orders as the court may make in regard to costs, in the name of the corporation or in the name of such receivers or trustees.

3. By the acts done by DeWolf in making the warehouse receipt and certificate, and shipping the flour to Gibson, and the subsequent pledge of the consignment to the plaintiffs a special property vested in them — they not having negotiated the draft — and the plaintiffs therefore would have a right, on giving notice to Gibson, before he had otherwise disposed of the goods consigned, or the proceeds of the sale if sold, in the ordinary course of business, to hold him liable in equity for the amount of such draft.

Then comes the question, whether, by Gibson's transfer of the consignment to Gardner & Co. to raise money for himself, in the manner he did, they took the flour subject to the like trust. This depends on the question whether Gibson stood in such relation as consignee that he had authority to pledge the consigned property, or whether he was so far a trustee holding the title, that his transfer to raise money for himself, although a breach of his trust, was a valid transfer by a trustee,

so as to give a valid title to the purchasers, provided they had no notice of the trust. If he was a consignee and to be treated as such, was his conveyance by way of hypothecation valid or void?

At common law, the character of Gibson being that of consignee, if he accepted the consignment, he was bound to accept and pay the draft drawn expressly against it, and could not claim to hold the goods and the proceeds in his general account, although he was a creditor of the consignor; and the hypothecation of the goods to Gardner & Co., for advances of money to himself, passed no title to Gardner & Co., because the absolute legal title was not in him, nor under his authority to sell, because he did not sell, but did mortgage or pledge the flour. See *De Wolf* v. *Gardner*, 12 Cush. 24.

The *St.* of 1845, *c.* 193, so far changes the common law that, if the consignee in possession or having the bill of lading making the merchandise deliverable to him shall make a *bona fide* contract of sale, such contract shall be deemed valid. He may sell for credit, against his orders; he may take his own note in payment, in other words, apply the proceeds to his own debt; or he may make any other definitive and final disposition of the property, as by barter or on unusual terms; and yet he shall be so far deemed the owner as to make such sale. But this does not authorize a pledge or mortgage. The *St.* of 1849, *c.* 216, § 3, was passed after this transaction, and cannot affect it. But it shows that the former statute was insufficient, and extends the authority, and by expressly giving the authority to pledge implies that that authority did not exist before, even where the pledge was made in good faith and with probable cause to believe that the agent had authority, and was not acting fraudulently therein against the owner of the property. See *Warner* v. *Martin*, 11 How. 209; *De Wolf* v. *Gardner*, 12 Cush. 19 *Ullman* v. *Barnard*, 7 Gray, 554.

*Decree for the plaintiffs.*